# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 17-cv-61947-GAYLES/SELTZER

FUSION ANALYTICS INVESTMENT
PARTNERS LLC,
                **Plaintiff,**

v.

WEALTH BRIDGE SOLUTIONS, LLC,
PETER WEITZ, STEVEN WEITZ, and
BRIAN RICE,
                **Defendants.**

_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint [ECF No. 83] ("Motion") and on Defendant Brian Rice's Motion to Dismiss Plaintiff's Third Amended Verified Complaint [ECF No. 82] ("Rice Motion"). For the reasons that follow, Defendants' Motion is granted in part and the Rice Motion is denied as moot.

## I.    FACTUAL BACKGROUND[1]

Defendants Peter and Steven Weitz ("Weitz Defendants") began working for Plaintiff Fusion Analytics Investment Partners, LLC ("Fusion") in May 2009. As investment advisors, the Weitz Defendants handled at least 200 Fusion clients, and had access to confidential client information, including transaction histories, account types, account balances, asset allocations, income, liquid and total net worth, and tax information, among other information. The Weitz Defendants resigned their positions with Fusion on September 25, 2017, to take up employment with Defend-

---

[1]     Although the Court held an evidentiary hearing on a motion for preliminary injunction in this case, because the motion before the Court is a motion to dismiss, the Court will set forth here only those facts alleged in the Third Amended Verified Complaint [ECF No. 73].

ant Wealth Bridge Solutions, LLC ("Wealth Bridge"). Over the preceding months, and in anticipation of this move, the Weitz Defendants solicited Fusion clients and secreted confidential client information to their personal possession. Wealth Bridge and Defendant Brian Rice ("Rice"), Wealth Bridge's Chief Executive Officer, aided and encouraged the scheme of the Weitz Defendants and provided them financial incentives for diverting Fusion clients to Wealth Bridge. Finally, on his last day of employment with Fusion, Peter Weitz used computer "wiping" software, DP Wiper, to delete Fusion business files and to conceal his actions leading up to his departure.

## II.      PROCEDURAL BACKGROUND

On October 3, 2017, Fusion brought this action against the Weitz Defendants, Wealth Bridge, and Rice, alleging misappropriation of trade secrets, breach of duty of loyalty, conversion, unfair competition, and tortious interference with contract. [*See* ECF No. 1, at 8–11]. Fusion alleges that when the Weitz Defendants resigned from Fusion, they took with them Fusion's confidential client information—information that, according to Fusion, constitutes protectable trade secrets—and unlawfully solicited Fusion clients to move their business to Wealth Bridge.

At the time of filing, Fusion moved for a temporary restraining order and for a preliminary injunction. [ECF Nos. 1 & 4]. Based on the initial allegations, the Court entered a Temporary Restraining Order [ECF No. 7] on the same day. On October 4, Defendants filed an Emergency Motion to Modify Temporary Restraining Order [ECF No. 12], on which the Court held a telephonic hearing on October 6, 2017. The Court granted Defendants' Motion to Modify in part and entered an Amended Temporary Restraining Order [ECF No. 20] on October 11, 2017. The Court set the evidentiary preliminary injunction hearing for October 19, 2017.

Before the preliminary injunction hearing, Defendants challenged the sufficiency of Fusion's jurisdictional allegations. The Court ordered Fusion to come prepared to identify each member of the LLC for the purposes of ascertaining whether diversity jurisdiction existed. [ECF No.

2

23]. At the hearing, Fusion asserted that there were only two LLC members: Michael Conte, a citizen of New York, and Kevin Lane, a citizen of Massachusetts. Defendants noted their belief that these assertions were inconsistent with internet business records for the company. At the close of the October 19 hearing, the Court declined to extend the Amended TRO and denied Fusion's Motion for a Preliminary Injunction, noting that Fusion had not shown a likelihood of success on the merits or irreparable harm. [*See* ECF No. 45, at 249]. The Court indicated that a detailed written order was to follow. [ECF No. 40].

After the preliminary injunction hearing, Defendants filed a motion to dismiss, raising a facial challenge to diversity jurisdiction. [ECF No. 43]. After Fusion failed to adequately respond, and because the pleadings were deficient, the Court granted the motion to dismiss. [ECF No. 52]. Plaintiff then moved for leave to file an amended complaint. [ECF No. 53]. Because its proposed amendment would cure the pleading deficiencies set forth in Defendants' motion, the Court granted Fusion leave to amend and noted that Defendants could then properly raise any factual jurisdictional challenges to the amended pleading. [ECF No. 57]. Defendants then moved to dismiss, asserting a factual challenge. [ECF No. 62]. Defendants' factual attack on diversity jurisdiction argues that Fusion Analytic Holdings, LLC ("Holdings")—an entity that undisputedly includes a non-diverse party—is a member of Fusion. On the day its response to the motion to dismiss was due, Fusion improperly filed a Second Amended Complaint [ECF No. 63] without leave of court (leave it had previously sought). In the Second Amended Complaint, Fusion maintained that diversity jurisdiction existed, but added a federal claim under the Computer Fraud and Abuse Act ("CFAA"). The Court set a status conference. At that status conference, the Court granted Fusion's *ore tenus* motion for leave to file a Third Amended Complaint to cure certain deficiencies in its federal claim that Defendants identified. [ECF No. 71].

3

On February 16, 2018, Fusion filed the operative Third Amended Verified Complaint [ECF No. 73], still maintaining that the Court has diversity jurisdiction over the entire case, and revising its federal claim under the CFAA. Defendants moved to dismiss the Third Amended Complaint, arguing that the Court lacks diversity jurisdiction, that Fusion fails to state a claim against Brian Rice, that Fusion fails to state a claim under the CFAA against Peter Weitz, and that even if the Court finds that Fusion has adequately stated a CFAA claim, supplemental jurisdiction over the remaining state law claims would be inappropriate. [*See* ECF Nos. 82 & 83].

## III.    ANALYSIS

### A.    *Diversity Jurisdiction*

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "A district court must have jurisdiction under at least one of the three types of subject-matter jurisdiction: (1) jurisdiction pursuant to a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Butler v. Morgan*, 562 F. App'x 832, 834 (11th Cir. 2014). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (citations omitted).

A motion to dismiss for lack of subject matter jurisdiction brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure may present either a facial or a factual challenge to the complaint. *See McElmurray v. Consol. Gov't*, 501 F.3d 1244, 1251 (11th Cir. 2007). A facial challenge provides Plaintiff with similar safeguards to those of a Rule 12(b)(6) motion, and "the court must consider the allegations in the plaintiff's complaint as true." *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)). In a facial challenge, a court is re-

quired to determine only that the plaintiff has "sufficiently alleged a basis for subject matter jurisdiction, and the allegations in [the] complaint are taken as true for purposes of the motion." *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). By contrast, a factual attack "challenge[s] 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered.'" *McElmurray*, 501 F.3d at 1251 (quoting *Lawrence*, 919 F.2d at 1529). In a factual attack, "no presumptive truthfulness attaches to [a] plaintiff's allegations," *Lawrence*, 919 F.2d at 1529 (quoting *Williamson*, 645 F.2d at 413), and the plaintiff bears the burden to prove the facts sufficient to establish subject matter jurisdiction. *See OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

Before the Court now is a factual challenge to jurisdiction. It is undisputed that Holdings is a non-diverse entity. That is, several members of Holdings are Florida citizens, [*see* ECF No. 83-5], as are the Weitz Defendants. Thus, if Holdings is—or was at the commencement of this litigation—a member of Fusion, that fact would destroy federal diversity jurisdiction. Defendants have offered evidence demonstrating that Holdings is or was a member of Fusion. Most persuasively, Defendants have submitted Securities and Exchange Commission ("SEC") Form ADV filings from July 15, 2017, December 8, 2017, and January 3, 2018. [ECF Nos. 83-2, 83-3, 83-4]. In each of these filings—which span from before this litigation to several months after its filing in October 2017—Fusion represented under penalty of perjury to the SEC not only that Holdings was a member, but also that it was the *controlling* member of Fusion, with a greater than 75% interest. [*See, e.g.*, ECF No. 83-4, at 20]. In Fusion's March 2016 Form ADV Part 2A Brochure, the company asserts that "Fusion Analytics Holdings, LLC is the Company's principal and sole direct owner" and that "[t]he principal owners of Fusion Analytics Holdings, LLC (and therefore indirect principal owners of the Company) are Kevin P. Lane and Michael J. Conte." [ECF No. 83-6, at 5]. And Holdings' own website indicates that it is "a financial services holding company

which owns . . . Fusion Analytics Investment Partners LLC." [ECF No. 83-7, at 2].

In response to this mountain of evidence that Holdings is or was a member of the LLC, Fusion submits the sworn declaration of Joseph Conte, Fusion's Chief Financial Officer. [ECF No. 94-1]. Mr. Conte asserts that Fusion at one point intended to transfer ownership to Holdings, and believed that it had in fact transferred ownership to Holdings, but now is unable to find documents effectuating that transfer and, thus, believes that the transfer never occurred. He claims that Fusion's erroneous SEC filings—filed under penalty of perjury—"will be corrected with the appropriate government agencies." [*Id.* ¶ 7]. Fusion asks the Court to believe that this was a simple mistake that it will correct with the SEC. Yet Mr. Conte's declaration comes more than six months after Defendants first alerted Fusion to this issue, and with two intervening (apparently false) SEC filings. In light of Defendants' evidence, Fusion's explanation is not credible and the Court is not satisfied that there is in fact complete diversity among the parties.[2]

### B. Computer Fraud and Abuse Act

In the Third Amended Complaint [ECF No. 73], Plaintiff brings one count under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, against only Peter Weitz. Defendants move to dismiss this count for failure to state a claim.

To survive a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the mis-

---

[2] The Court notes that Plaintiff's counsel has now had many months and multiple opportunities to clarify the record regarding diversity jurisdiction. Yet in the face of numerous sworn SEC filings and other documentation showing the lack of diversity jurisdiction, counsel has submitted one declaration and no credible explanation for the discrepancies identified above. The Court is left to conclude that this failing could be caused by only one of two things: lack of candor with the Court or a lack of due diligence. Either explanation is troubling.

conduct alleged." *Id.* While a court must accept well-pleaded factual allegations as true, "con-clusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). How-ever, "the pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

The CFAA makes it unlawful to "knowingly cause[] the transmission of a program, in-formation, code, or command, and as a result of such conduct, intentionally cause[] damage without authorization, to a protected computer." *Id.* § 1030(a)(5)(A). A private civil action may be brought by "[a]ny person who suffers damage or loss by reason of a violation" of the CFAA, but only if the action meets a condition enumerated in subsection (c)(4)(A)(i). *Id.* § 1030(g). The relevant enumerated condition in this case is that there must have been a "loss . . . aggregating at least $5,000 in value." *Id.* § 1030(c)(4)(A)(i)(I).

In order to bring this private action, then, Fusion must allege both that it suffered "dam-age," *id.* § 1030(a)(5)(A), *and* that it suffered a "loss" aggregating at least $5,000 in value, *id.* § 1030(c)(4)(A)(i)(I). The statute defines "damage" as "any impairment to the integrity or availa-bility of data, a program, a system, or information." *Id.* § 1030(e)(8). It defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a dam-age assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of an interruption of service." *Id.* § 1030(e)(11).

7

Defendants argue that Fusion has failed to adequately plead that it suffered "damage"—that is, that it suffered an impairment to the integrity or availability of data, a program, a system, or information. In its Third Amended Complaint, Fusion alleges that "[b]y permanently deleting Fusion's business information from his Fusion computer, Peter Weitz impaired the availability of the data on Fusion's computer, thereby causing damage." [ECF No. 73, ¶ 44]. Defendants respond that the data was not permanently deleted because much of it was recovered by Fusion itself and the rest was given back to Fusion in the course of this litigation. Assuming *arguendo* that "permanent" deletion is required to find "damage" under the CFAA, *see Cheney v. IPD Analytics, L.L.C.*, No. 08-cv-23188, 2009 WL 1298405 (S.D. Fla. Apr. 16, 2009), it is a factual determination that is inappropriate at this stage. Thus, the Court concludes that Fusion has stated a claim under the CFAA sufficient to survive a motion to dismiss.

C.      *Supplemental Jurisdiction*

Having determined that the Third Amended Verified Complaint states a claim under the CFAA sufficient to survive a motion to dismiss, and in the absence of diversity jurisdiction, the Court must determine whether it is appropriate to exercise supplemental jurisdiction over the remaining state claims. Pursuant to statute, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. Because the CFAA claim here relates to Peter Weitz allegedly concealing information in furtherance of the alleged trade secret theft, the Court finds that these claims all form part of the same case or controversy.

Nevertheless, a district court "may decline to exercise supplemental jurisdiction over a [state] claim under [§ 1367(a)] if . . . the [state] claim substantially predominates over the claim or claims over which the district court has original jurisdiction." *Id.* § 1367(c)(2). This provision

allows for district courts to decline to exercise supplemental jurisdiction "when it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 744 (11th Cir. 2006) (quoting *McNerny v. Neb. Pub. Power Dist.*, 309 F. Supp. 2d 1109, 1117–18 (D. Neb. 2004)). The Court finds that the array of state law claims against the four defendants substantially predominate over the single CFAA claim against only Peter Weitz. Thus, the Court declines to exercise supplemental jurisdiction over the state law claims in Counts I, II, and IV.

## IV.    CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint [ECF No. 83] is **GRANTED IN PART**. The motion is granted as to Counts I, II, and IV, and is denied as to Count III.

2.  Counts I, II, and IV are **DISMISSED without prejudice**. Plaintiff may refile those claims in state court.

3.  Defendant Brian Rice's Motion to Dismiss Plaintiff's Third Amended Verified Complaint [ECF No. 82] is **DENIED AS MOOT**.

4.  Peter Weitz shall file an answer to Count III on or before June 26, 2018.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 12th day of June, 2018.


_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE